679 So.2d 348 (1996)
David KENET, M.D., Robert Owen Kenet and Monica Sue Kenet, as Trustees of the K.C. Trust, Appellants/Cross-Appellees,
v.
Guy B. BAILEY, Jr. and Bailey, Hunt, Jones & Busto, P.A., Appellees/Cross-Appellants.
No. 95-2824.
District Court of Appeal of Florida, Third District.
September 4, 1996.
Rehearing Denied September 4, 1996.
*349 Maland & Ross and Lauri Waldman Ross, Miami; Walton, Lantaff, Schroeder & Carson, and Richard P. Cole, Miami, for appellants/cross-appellees.
Bailey & Jones and James C. Cunningham, Jr.; Metsch & Metsch and Larry Metsch, for appellees/cross-appellants.
Before COPE, GERSTEN and FLETCHER, JJ.

CORRECTED OPINION
FLETCHER, Judge.
The plaintiffs David Kenet, M.D. [Kenet] and Robert Owen Kenet and Monica Sue Kenet, as Trustees of the K.C. Trust, have appealed, and the defendants Guy B. Bailey, Jr. and Bailey, Hunt, Jones & Busto, P.A. [Bailey and law firm] have cross-appealed a final summary judgment denying relief on their various claims and counterclaims based on the trial court's understanding of the effects of mutual releases executed by some of the parties. Additionally, the plaintiffs seek reversal of the trial court's order denying their separate motion for summary judgment on their claims, and reversal of its order on plaintiffs' motion to amend the complaint to assert a claim for punitive damages. The defendants have cross-appealed the trial court's orders dismissing their counterclaims and denying leave to amend to assert an additional counterclaim. For the reasons which follow, we reverse the summary final judgment against the plaintiffs with directions to enter judgment in the plaintiffs' favor on the issue of compensatory damages; reverse the order denying the plaintiffs' motion to amend to claim punitive damages with instructions to grant the same; affirm the trial court's order dismissing the defendants' counterclaims; and affirm the order denying defendants' motion to amend to assert an additional counterclaim.
Bailey and the law firm represented Kenet and a non-party, Leonard Freed, M.D., in litigation against third parties which, in 1985, resulted in a substantial settlement in favor of Kenet. There remained certain unresolved issues between Kenet and Freed as to this settlement, including a dispute as to whether Kenet had pledged a sum of money to a certain foundation; these issues were to be resolved by arbitration at a later date. As a consequence of this pending dispute, Bailey and the law firm placed $95,186.00 of Kenet's proceeds from the settlement into the law firm's trust account until the result of this arbitration. Bailey and his firm had no interest in the funds, other than properly carrying out their fiduciary relationship. The firm continued to provide an accounting of the escrowed funds to Kenet and Freed.
The 1985 litigation involved a limited partnership known as DFK, Ltd., in which Kenet, Freed, and others owned interests, and whose primary asset was the Coral Reef Hospital. In partial satisfaction of his fee, Bailey received an interest in DFK, Ltd. DFK sold the hospital in October, 1990, and, on December 31, 1990, Kenet, Freed and Bailey signed a settlement agreement regarding the liquidation of their respective interests in DFK, Ltd. In connection with this settlement, Kenet, Freed and Bailey also signed mutual general releases and covenants not to sue. Bailey's proportionate share of the proceeds was then distributed to him.
On January 31, 1991, without informing Kenet, Bailey directed the law firm to disburse the trust account funds still being held from the 1985 settlement to Bailey's own "special account." Subsequently, on February 19, 1991, Kenet, still unaware of the disbursement of the trust funds to Bailey, *350 executed a second release. Throughout these events, Kenet continued preparing for arbitration proceedings.[1] He ultimately learned of the disbursement six months later in June, 1991, when Bailey finally revealed to Kenet's new attorney that the funds had been "distributed" to Bailey.
Kenet, through his new attorney, demanded the return of the funds. Although Bailey had no claim to the trust funds from either the 1985 settlement or the liquidation of DFK, Ltd., he refused to return the funds to the trust account or to Kenet. In April, 1992, after various entreaties to Bailey had failed, Kenet filed suit for conversion, breach of fiduciary duty and negligent bailment against his former attorney Bailey and the law firm. A second suit was filed by the trustees of the "K.C. Trust," the prospective recipient of a portion of the trust account funds, which suit was consolidated with Kenet's suit.
Bailey and the law firm defended the removal of the trust account funds not on any claim for services rendered or as a share of the liquidation of DFK, Ltd., but solely on a claim ostensibly created[2] by the mutual general releases and covenants not to sue which had been executed in connection with the liquidation of DFK, Ltd. Bailey and the law firm contend that the language of the release by Kenet frees them from all "debts" they owe or may owe to Kenet "from the beginning of time to the date hereof."[3] Thus, they argue the "debt" owed to Kenet of the trust account funds held by them pending the arbitration proceeding was released by this document. The trial court agreed and entered final summary judgment based on its conclusion that the trust account funds had been "released" to Bailey (notwithstanding that Bailey had no prior claim thereto).
Bailey and the law firm's characterization of a client's funds held by an attorney in his trust account as constituting a "debt" is woefully inadequate, akin to describing Dadeland Mall as a shoe store. While a deposit into a trust account may be a "debt" in the sense that it obligates the attorney to refund it on demand by the client, it is a transaction that far exceeds a mere "debt." When an attorney receives money from his client to place into the attorney's trust account for the client's purpose, a fiduciary relationship[4] is established and a failure to return the money on demand (or to use it as instructed) carries with it substantial potential consequences. Misuse of a client's funds (for they are that even though deposited in a bank account physically controlled by the attorney) is one of the most serious offenses a lawyer can commit. The Florida Bar v. MacMillan, 600 So.2d 457 (Fla.1992); The Florida Bar v. Shanzer, 572 So.2d 1382 (Fla. 1991).
The Rules Regulating The Florida Bar contain an entire chapter regulating trust accounts, making it more than clear that trust fund obligations cannot be described as mere "debts." R. Regulating Fla. Bar 5-1.1-1.2. The very first provision of the chapter states:
"(a) Nature of Money or Property Entrusted to Attorney. Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorney's *351 fees, and a refusal to account for and deliver over such property upon demand shall be deemed a conversion. This is not to preclude the retention of money or other property upon which the attorney has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collection."
R. Regulating Fla. Bar 5-1.1(a).
Bailey and the law firm had no lien or preclusionary right to the escrowed funds. The funds were escrowed with them for a specific purposethe arbitrationand were unrelated to any other matter. The releases executed by Kenet plainly do not apply to the trust funds and do not give rise to a claim by Bailey and the law firm. Under the circumstances, when Bailey and the law firm disbursed the trust funds into Bailey's personal account that act provided Kenet with a cause of action for conversion.[5]Restivo v. Anderson & Anderson, P.A., 453 So.2d 1167 (Fla. 4th DCA 1984), rev. denied, 461 So.2d 113 (Fla.1985). As the facts are uncontroverted, Bailey and his law firm are liable to Kenet on his claims of conversion and breach of fiduciary duty as a matter of law. The trial court, therefore, erred in not granting Kenet's summary judgment motion on these claims.
Kenet further contends that he proffered sufficient evidence of record to submit the issue of punitive damages to a jury. We agree. Kenet's motion for leave to amend to assert punitive damages should also have been granted.
Turning to the cross-appeal, Bailey and his law firm seek review of the dismissal of their various counterclaims for failure to state a cause of action. The counterclaims were for declaratory judgment, fraudulent inducement, conspiracy to defraud, tortious interference and breach of fiduciary duty. It serves no purpose to review each claim individually. Suffice it to say that all of the dismissed counterclaims, which were "defensive" in nature, failed in their allegations, and were correctly dismissed or subjected to summary judgment.
Finally, Bailey and the law firm complain that the trial court erred when it refused to permit them to amend their counterclaim to state a claim for breach of the covenant not to sue, which covenant is a part of the mutual releases. As the releases did not include the trust funds, the covenant not to sue does not relate to the trust funds. Thus Kenet did not violate the covenant by suing for the trust funds, and the trial court's denial of Bailey's and the law firm's leave to amend was not error.
We reverse the final summary judgment entered below and remand for entry of a judgment in Kenet's favor in the principal amount of $131,849.06 (the original funds of $95,186.00 together with the accrued interest) plus prejudgment interest from January 31, 1991 (the date of the conversion of the trust funds). The order denying Kenet's motion to amend the complaint to assert a punitive damages claim is reversed with instructions to grant said motion and to schedule a trial of Bailey's and the law firm's liability for punitive damages and the amount of damages, if any. We affirm the dismissal of the counterclaims and the denial of the motion to amend said counterclaims.
NOTES
[1] Bailey did not inform the arbitrator that the funds in dispute were no longer escrowed even though Bailey himself had selected the arbitrator.
[2] This appears to be diametrically opposed to the purpose of a release, which is to terminate a claim, not create one.
[3] Nowhere in the settlement documents or the general releases and covenants not to sue is there any reference to the trust funds or to the arbitration proceedings.
[4] In relation to fiduciary relationships, Chief Judge Cardozo in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) had the following to say:

"Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."
[5] Bailey's contention that the second release by Kenet, executed in February, 1991, after the disbursement, released Bailey and the law firm from the conversion is erroneous. At that time Kenet was unaware that the distribution had taken place, thus the release was ineffective as to the conversion. See Ciliberti v. Ciliberti, 416 So.2d 48 (Fla. 3d DCA 1982).